Case 3:08-mj-01118-RBB   Document 1   Filed 04/11/2008   Page 1 of 8

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA
```

FILED '08 APR 11 PM 12:49

UNITED STATES OF AMERICA, )  MAGISTRATE CASE NO. 08 MJ 1118
                Plaintiffs, )  COMPLAINT FOR VIOLATION OF
                v. )  Title 18 U.S.C., Section 2113(a) Bank Robbery
ANDRE TYREESE LEGGETT (1), )
DEOSSY GENE GIBBS (2) )
                Defendants. )

The undersigned complainant, being duly sworn, states:

Count 1

On April 10, 2008, within the Southern District of California, defendants ANDRE TYREESE LEGGETT and DEOSSY GENE GIBBS, by force, violence, and by intimidation, did unlawfully take from the person and presence of an employee of Pacific Trust Bank, at 279 F Street, Chula Vista, California, approximately $3300 in United States currency belonging to and in the care, custody, control, management and possession of the Pacific Trust Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

And the complainant states that this complaint is based on the attached Probable Cause Statement incorporated herein by reference.

CARLA J. CROFT, Special Agent
Federal Bureau of Investigation

SWORN TO ME AND SUBSCRIBED IN MY PRESENCE THIS 11th DAY OF APRIL 2008.

RUBEN B. BROOKS
United States Magistrate Judge

## AFFIDAVIT

I, Carla J. Croft, Special Agent (SA) of the Federal Bureau of Investigation (FBI), being duly sworn, depose and say:

1. I am currently assigned to violent crimes investigations in the San Diego Field Division of the FBI. The information contained in this affidavit is based upon my personal knowledge and on the information I have learned from reviewing official reports and speaking with other local and federal law enforcement officers.

2. This affidavit is in support of a Complaint for ANDRE TYREESE LEGGETT, black male, date of birth May 04, 1989, for violation of Title 18 of the United States Code, Section 2113 (a), Bank Robbery.

3. On Thursday April 10, 2008, at approximately 11:09 a.m., the affiant responded to the report of a robbery at the Pacific Trust Bank, 279 F Street, Chula Vista, California.

4. The affiant interviewed the victim teller from Pacific Trust Bank, 279 F Street, Chula Vista, California, who advised as follows:

    a. On April 10, 2008, as the teller was working a black male entered Pacific Trust Bank, 279 F Street, Chula Vista, California, while speaking on a cellular telephone. The teller greeted the black male, who was carrying two blue merchant bags. The black male told the teller that his boss needed to speak with her and handed her the cellular telephone.

    b. Upon receiving the cellular telephone the teller heard a male voice state, "I've been watching you closely. I know what you're doing. If you do what I tell you, I won't hurt you or your family." The teller handed the cellular telephone back to the black male standing in front of her. The teller then began removing money

from her top drawer and placing the money into one of the merchant bags. The black male stated that his boss only wanted hundreds, at which time the teller removed the hundreds from her second drawer as well. The black male stated that was not enough money and to provide him with the fifty dollar bills as well. The teller then provided the black male with all her fifty dollar bills. The black male exited Pacific Trust Bank, 279 F Street, Chula Vista, California, through the north exit.

c. The teller was contacted shortly after the robbery by Chula Vista Police Officers, who took her to an area where the passenger of a stopped vehicle matched the description of the bank robber. Upon viewing the passenger the teller positively identified the individual as the black male who had entered Pacific Trust Bank, 279 F Street, Chula Vista, California, and robbed her.

5. The affiant spoke with officers of the Chula Vista Police Department who advised as follows: Immediately after the report of the robbery of Pacific Trust Bank, 279 F Street, Chula Vista, California, undercover Chula Vista Police Officers in the area, observed an individual matching the description of the bank robber get into a gray SL ~~green~~ Dodge Durango, back from a parking space, and turn east on F Street, Chula Vista, California. The undercover Chula Vista Police Officers followed the gray SL ~~green~~ Dodge Durango to the entrance ramp to northbound Interstate 805 where Chula Vista Police Officers in marked units performed a traffic stop. After performing the traffic stop, defendant ANDRE TYREESE LEGGETT, was found to be riding as a passenger in the gray SL ~~green~~ Dodge Durango getaway vehicle. LEGGETT was wearing a bright green shirt. Co-defendant DEOSSY GENE GIBBS was found to be the driver of the gray SL ~~green~~ Dodge Durango getaway vehicle.

    a. Chula Vista Police Officers detained defendant, LEGGETT, along with the co-defendant DEOSSY GENE GIBBS, who later admitted to being the male voice on the cellular telephone used by defendant LEGGETT during the bank robbery. During the detention, Chula Vista Police Officers brought the victim teller to the scene at the northbound entrance ramp to Interstate 805, where she provided a positive identification of LEGGETT.

    b. The blue merchant bags utilized during the robbery of Pacific Trust Bank, 279 F Street, Chula Vista, California were recovered from the gray su [~~green~~] Dodge Durango.

    c. Also $3300 in United States currency was recovered inside the gray su [~~green~~] Dodge Durango, which was the exact amount stolen during the aforementioned robbery of Pacific Trust Bank, 279 F Street, Chula Vista, California.

6. LEGGETT, after being transported to Chula Vista Police Department, was advised of his constitutional Miranda rights. LEGGETT advised that he understood his rights and voluntarily signed the FBI Advice of Rights form indicating he was willing to answer questions without an attorney present. LEGGETT voluntarily advised as follows:

    a. LEGGETT had known GIBBS for approximately ten years. LEGGETT spent time with GIBBS' family and often worked odd jobs for GIBBS including yard work and moving heavy items. Approximately two months ago, GIBBS had given LEGGETT one hundred dollars to use towards the purchase of a vehicle. GIBBS told LEGGETT that he would have some work for him to do later in exchange for the money.

    b. On the morning of April 10, 2008, LEGGETT was at school when he received a call from GIBBS. GIBBS asked LEGGETT if he wanted to make some money. LEGGETT agreed to leave school and go with work

with GIBBS. LEGGETT believed they would be doing work similar to what he had previously done with GIBBS.

c. GIBBS picked up LEGGETT and they drove south. During the drive GIBBS told LEGGETT there would be consequences for what they were going to do. LEGGETT did not question GIBBS as to the work they were going to do or what consequences he was referring to as LEGGETT trusted GIBBS. GIBBS asked LEGGETT if he was nervous. LEGGETT was told that he would be paid ten racks by the end of the day.

d. Eventually, GIBBS pulled up to Pacific Trust Bank, 279 F Street, Chula Vista, California. LEGGETT was provided with a Boost Motorola cellular telephone, (619) 608-7044 that is owned by GIBBS and two blue money bags. GIBBS told LEGGETT that he would call him on the cellular telephone while LEGGETT entered the bank. Once in the bank LEGGETT was to give the bags and the cellular telephone to the woman. LEGGETT entered Pacific Trust Bank, 279 F Street, Chula Vista, California, with the blue money bags and the Boost Motorola cellular telephone.

e. LEGGETT provided the Boost Motorola cellular telephone (619) 608-7044 to the teller once inside, which had been called by GIBBS with another Boost Motorola cellular telephone (619) 722-9048. LEGGETT assumed that GIBBS was talking to the teller, however, he did not know what GIBBS was saying. The teller put money in one of the bags and gave LEGGETT the cellular telephone. GIBBS told LEGGETT to tell the teller that he only wanted hundred dollar bills. LEGGETT told the teller and then told her to add the fifty dollar bills as well.

f. LEGGETT exited Pacific Trust Bank, 279 F Street, Chula Vista, California, and reentered the ~~green~~ gray/er Dodge Durango, which was



stopped shortly thereafter attempting to enter Interstate 805 northbound.

      g. LEGGETT was transported to the Federal Bureau of Investigation, San Diego Field Office, for booking. After being booked, LEGGETT requested and was granted permission to call his mother. While speaking with his mother LEGGETT stated, "Don't bother getting a lawyer. I did it. Why waste the money?"

7. LEGGETT is described as follows:

| | |
|---|---|
| Name: | ANDRE TYREESE LEGGETT |
| Race: | Black |
| Sex: | Male |
| Date of Birth: | May 4, 1989 |
| Social Security#: | XXX-XX-6756 |
| Height: | 6'1" |
| Weight: | 145 pounds |
| Build: | Thin |
| Hair: | Black, short |
| Residence: | 6219 Alderley Street San Diego, California |

8. GIBBS, after being transported to Chula Vista Police Department, was advised of his constitutional Miranda rights. GIBBS advised that he understood his rights and voluntarily signed the FBI Advice of Rights form indicating he was willing to answer questions without an attorney present. GIBBS voluntarily advised as follows:

      a. GIBBS and LEGGETT had begun discussing committing the robbery of Pacific Trust Bank, 279 F Street, Chula Vista, California, a couple of days prior to the actual commission. GIBBS favored the Pacific Trust Bank, 279 F Street, Chula Vista, California, after visiting the bank approximately three weeks prior.

b. On April 10, 2008, GIBBS and LEGGETT discussed the consequences of committing the bank robbery outside of ECC school, San Diego, California, where GIBBS met LEGGETT. LEGGETT stated, "Let's go do it." Upon agreement, GIBBS and LEGGETT drove to Pacific Trust Bank, 279 F Street, Chula Vista, California.

c. Once parked outside Pacific Trust Bank, LEGGETT was provided with a Boost Motorola cellular telephone, (619) 608-7044 that is owned by GIBBS and two blue merchant bags. LEGGETT entered Pacific Trust Bank, 279 F Street, Chula Vista, California, with the two blue merchant bags and the Boost Motorola cellular telephone.

d. LEGGETT provided the Boost Motorola cellular telephone (619) 608-7044 to the teller once inside, which had been called by GIBBS with another Boost Motorola cellular telephone (619) 722-9048. GIBBS stated to the teller, "We've been watching you for awhile. Put the money in the bag. He's not going to hurt anybody. Do you understand?".

e. LEGGETT exited Pacific Trust Bank, 279 F Street, Chula Vista, California, and reentered the gray ~~green~~ Dodge Durango, which was stopped shortly thereafter on the access ramp to Interstate 805 northbound. Upon being stopped by Chula Vista Police Officers GIBBS telephoned his wife, Marcia Gibbs, stating, " Things are not right, I'm not coming home right now."

9. GIBBS is described as follows:

| | |
|---|---|
| Name: | DEOSSY GENE GIBBS |
| Race: | Black |
| Sex: | Male |
| Date of Birth: | November 19, 1967 |
| Social Security#: | XXX-XX-0198 |
| Height: | 5'11" |

7

|  |  |
|---|---|
| Weight: | 350 pounds |
| Build: | Heavy |
| Hair: | Black, short |
| Residence: | 6260 Alderley Street |
|  | San Diego, California |

10. The affiant has confirmed that the deposits of the Pacific Trust Bank, 279 F Street, Chula Vista, California, were insured by the Federal Deposit Insurance Corporation (FDIC) at the time of the bank robbery on April 10, 2008. The Pacific Trust Bank, 279 F Street, Chula Vista, California, incurred a loss of $3300 in United States currency as a result of that bank robbery.

11. The foregoing information and evidence indicates that ANDRE TYREESE LEGGETT and DEOSSY GENE GIBBS, on April 10, 2008, did by force take from the person and presence of employees of Pacific Trust Bank, 279 F Street, Chula Vista, California, the deposits of which were then insured by the FDIC, approximately $3300 in United States currency, belonging to and in the care, custody, control, management, and possession of such bank.

The foregoing is true and correct to the best of my information and belief.

_____
Carla J. Croft
Special Agent, FBI

Sworn to before me and subscribed in my presence this 11th day of April, 2008, at 12:35 a.m. (p.m.).

_____
Ruben B. Brooks
United States Magistrate Judge

8